IN THE UNITED DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| JANICE MORGAN, BARBARA RICHARDSON, CORA CANNON, LAURIE R. TROUT (WILSON) on behalf of themselves and all others similarly situated, ) ) ) ) ) ) | |
| Plaintiffs, ) | |
| vs. ) ) | CIVIL ACTION NUMBER: CV-01-C-0303-W |
| FAMILY DOLLAR STORES, INC., ) ) | |
| Defendants. ) | |

## AFFIDAVIT OF GREGORY WIGGINS

I, Gregory Wiggins, having been duly sworn, deposes and says:

1.  I am one of the counsel of record for the plaintiffs and opt-in plaintiffs in the above styled case and I make this affidavit on my own personal knowledge.

2.  Answers to defendant's first 25 interrogatories and 30 production requests for the opt-in plaintiffs on the attached Appendix A were served seven days *prior* to the entry of the Court's Order dismissing them for not answering such discovery.

3.  Such answers were served April 23, 2004, less than thirty business days after the Court's March 16, 2004 Order clarifying which of defendant's interrogatories and production requests would be allowed.

4.  Until the Order of March 16, 2004 was entered, defendant had served more than 25 interrogatories allowed by Rule 33(a) and it was unclear which of such interrogatories would be

1

266

allowed by the Court. *See* F. R. Civ. P. 33(a) ("Without leave of Court or written stipulation, any party may serve . . . written interrogatories, not exceeding 25 in number including all discrete subparts . . . ."). Plaintiffs' counsel had earlier served objections to the defendant's first interrogatories and production requests on behalf of all the opt-in plaintiffs.

5. Once the Court clarified that it was allowing only the first 25 interrogatories on March 16, 2004, responses to such discovery were promptly assembled within a reasonable time and served on April 23, 2004 for all 2204 opt-ins who had not yet answered.

6. It usually takes longer than 30 business days to gather answers to individualized discovery from such a large group of class members or opt-in plaintiffs. Some opt-ins require more work than others. By the time defendant filed its motion to dismiss on April 19, 2004, plaintiffs' counsel had already served more than 300 opt-ins' answers to defendant's interrogatories and production requests. Plaintiffs also had answers ready to serve for approximately another 400 opt-ins as of that date over their own signatures, and was in the process of obtaining signatures to answers for the remaining opt-ins. Four days after the motion to dismiss was filed on April 19, 2003, plaintiffs served the answers of 443 additional opt-ins over their own signatures. Supplemental signatures of opt-ins have continued to be served on the defendant as they have been received in the mail since then.

7. Many of defendant's first 25 interrogatories and production requests addressed matters known only to plaintiffs' counsel, such as expert's opinions, privilege logs, methods of calculating backpay, identity of potential witnesses and documents at trial, and other interrogatories best answered by reference to defendant's own records or other documents under Rule 33(d). Because so many interrogatories and production requests were addressed to matters best known by

2

plaintiffs' counsel, plaintiffs' counsel was able to expedite the process of answering by serving responses to defendant's discovery over their own signatures for all the remaining opt-ins on April 23, 2004, supplemented by the signatures of 443 opt-ins served the same day and further supplemented by the signatures of 688 opt-ins since then.

8. As soon as the Court's Order of March 16th clarified which of defendant's more than 60 interrogatories and production requests would be allowed, plaintiffs' counsel *immediately* mailed the identified interrogatories and production requests to the opt-ins *the next day*. On March 17, 2004 plaintiffs' counsel mailed approximately 2300 letters to **all** of the opt-in plaintiffs, even those who had previously provided responses, instructing them to answer the enclosed interrogatories and produce any requested documents that had not been generated by Family Dollar itself. Plaintiffs' counsel were inundated with scores of phone calls every day thereafter seeking advice and assistance regarding such discovery.

9. Handwritten answers gradually began to be received from opt-ins during the next ten days and responses continued to come in each business day that the mail ran for the next 30 days and longer. As the handwritten answers arrived, they had to be reviewed and typed into the appropriate format so that they could be sent to the opt-ins to review and eventually be served. Beginning the day after the Court's March 16th Order, hundreds of hours were spent getting the answers ready for service. Such work continued throughout the first 30 business days after the Court's March 16th Order allowed such discovery, including the daily barrage of phone calls from opt-ins seeking assistance or advice concerning defendant's interrogatories and production requests. Plaintiffs' attorneys had already spent over $10,000.00 in postage, copying costs and other expenses associated with obtaining answers to the defendant's interrogatories and production requests by the time its

motion to dismiss was filed on April 19, 2004.

10. Defendant's motion to dismiss seriously underestimated the immense amount of time and expense necessary to contact and assist over 2200 opt-in class members in responding to interrogatories and production requests, much of which required legal knowledge and assistance in order to understand or answer.

11. The first 27 days after entry of the March 16, 2004 Order was compromised by the necessity of simultaneously contacting, scheduling, arranging travel, and preparing 250 other opt-ins to attend depositions during the same period. Until April 12, 2004, plaintiffs were on a court imposed fast-track deposition schedule that packed up to five opt-in depositions per day.

12. Thousands of hours were expended under very difficult circumstances in trying to simultaneously answer interrogatories for over 2200 opt-ins and prepare 250 opt-ins to attend depositions at the same time. As a result, the time and staff available to answer defendants' interrogatories was substantially reduced during the first four weeks following the Court's March 16th Order.

13. Given all of these circumstances and time pressures during the 30 days following the Court's March 16th Order, service of such answers by April 23, 2004 was not believed to be unreasonable, abusive or prejudicial. The Court had already denied that part of defendant's earlier motion requesting a deadline of April 12, 2004 for opt-ins to serve answers to its interrogatories and production requests. Dkt. #146, 153. In its *Motion To Clarify Or To Alter Or Amend Discovery Management Order* defendant's requested that opt-ins "be required to answer this written discovery before discovery cuts off on April 12, 2004" (Dkt. 146), but the district court denied that part of the motion on February 11, 2004. Dkt. #153. Plaintiffs assumed — perhaps wrongly in hindsight —

4

that the absence of a deadline in the March 16th Order for serving answers to such interrogatories was in recognition of the fact that plaintiffs' counsel was already taxed to the limits by the multi-track deposition schedule required by the Court through April 12, 2004. The hundreds of hours spent responding to interrogatories for over 2200 opt-ins in the first 30 days after entry of the Court's March 16, 2004 Order was not believed to be negligent or disobedient of the Court's March 16, 2004 Order. The lack of a deadline for serving such answers gave plaintiffs no reason to believe that serving them in mid-to-late April would be disobedient or less than diligent.

14.     Plaintiffs' counsel read the words "clarification of the Court's earlier orders" in the March 16th Order to mean that the Court was identifying which of defendant's excessive number of interrogatories needed to be answered, rather than entering an order compelling answers by a date certain. *See* Order entered March 16, 2004 (Dkt. 169). Plaintiffs' counsel believed that the Court would have included a deadline for answering if the order was meant to compel answers by a date certain rather than merely defining which of defendant's four sets of interrogatories would be allowed.

15.     Plaintiffs counsel saw no possibility of prejudice from serving answers for such a large group of opt-ins within 30 business days of the Court's March 16th Order identifying which interrogatories and production requests were allowed. The Company already had virtually all of the requested information and documents in its own records before it ever filed its motion to dismiss on April 19, 2004. The Court's March 16th Order stated that records already possessed by the defendant need not be produced again. Dkt. #169. Service of answers thirty business days after such Order was not believed to be prejudicial where the requested answers were already known from defendant's own records. Virtually all of the opt-ins' answers to defendant's discovery state that

5

they had no information or documents other than those generated by the defendants.

16. Family Dollar also had answers to virtually every interrogatory in the form of the Questionnaire answers which the Court had required to be produced last year. Indeed, the answered Questionnaires contain substantially more information, and better quality information, than that requested in defendants' first 25 interrogatories and first 30 production requests now at issue. On December 9, 2003, plaintiffs' counsel served defendant with answered Questionnaires for 1,199 opt-in plaintiffs. The answers to such Questionnaires are largely the same as the answers requested in defendants' First Set of Interrogatories. For example, both Interrogatory #1 and Questionnaire #1 ask for the opt-in's name, address, telephone number, and social security number. Both Interrogatory #8 and Questionnaire #2 ask for an opt-in's dates of employment at Family Dollar, tenure as a Store Manager, salary, and similar information. Both Interrogatory #9 and Questionnaire #3 ask for the number of hours an opt-in worked per week as a Store Manager — information already contained in defendants' own records.

17. Defendant has not utilized any of the 2500 opt-ins answers to interrogatories in its motions for summary judgment or motion to decertify the opt-in class filed May 12, 2004 even though more than 300 opt-ins answered the first 25 interrogatories and production requests well before the close of discovery on April 12, 2004 and another 2200 opt-ins answered such discovery on April 23, 2004.

18. Although work continued on opt-ins' answers throughout the first 30 business days after entry of the Court's March 16th Order, substantial confusion as to whether defendants still wanted answers to their first 25 interrogatories and 30 production requests continued throughout that period because of **defendants' effort after the March 16th Order to withdraw its first 25**

**interrogatories** served so that its last 25 interrogatories would rotate into the "first 25" addressed in such Order. *See* emails beginning March 19th attached in Appendix B.  Defendant e-mailed plaintiffs' counsel just three days after the Court's March 16th Order, stating that it would "**take whatever steps are necessary, including withdrawing the first served interrogatories, so that non-deposed opt-ins answer the last set of interrogatories served.**" *See* Exh. B attached hereto. Defendant, however, delayed taking any such steps for the next several weeks, apparently dropping its intent to try to substitute its last 25 interrogatories addressed in the Court's March 16th Order at some unknown point prior to filing its motion to dismiss on April 19, 2004.

19. On March 18, 2004, two days after the Court's March 16th Order identifying the "first 25" interrogatories served as the only ones allowed, defendant's counsel, Ron Kent, telephoned me and said that the defendant wanted the non-deposed opt-in plaintiffs to respond to the defendant's latest set of interrogatories (2/13/04) and not their "first twenty-five" interrogatories. Mr. Kent stated Family Dollar's position to be that there was no difference in responding to the fourth set of interrogatories rather than the first set except that the fourth set of interrogatories would provide the defendant with more meaningful and relevant information than the first 25. Mr. Kent concluded the conversation by informing me that he would take whatever steps necessary to force the non-deposed opt-in plaintiffs to respond to the fourth set of interrogatories served on February 13, 2004 rather than the the first 25 interrogatories identified in the Court's March 16th Order.

20. Following the exchange of e-mails on this subject on March 18th-29th Mr. Kent telephoned me to explain again why the defendant wanted the plaintiffs' to respond to the last set of interrogatories as opposed to the first 25 interrogatories. Mr. Kent told me that **he did not want the plaintiffs responding to the first set of interrogatories** and he would take whatever steps

7

necessary to obtain answers to the last set of interrogatories including filing a motion with the Court to force plaintiffs to respond **only** to the latest set of interrogatories and/or withdrawing the first set of interrogatories completely. Plaintiffs' counsel, in the presence of Mr. Kevin Jent an Attorney with the law firm of Wiggins, Childs, Quinn & Pantaziz, told Mr. Kent that, filing another motion concerning which interrogatories to answer would not be such a good idea, considering the Court's numerous recent rulings on the issue. Mr. Kent responded by stating, "**I will take whatever steps are necessary to protect my clients best interest**."

21.     Based upon Mr. Kent's unrelenting position that he did not want the non-deposed opt-in plaintiffs to respond to the first 25 interrogatories, plaintiffs' counsel waited for defendant to file its motion seeking to withdraw the first 25 interrogatories served so that the last 25 interrogatories would rotate into the position of "first 25" referenced in the Court's March 16th Order. The first notice that plaintiffs' counsel received indicating that such a motion would not be filed was the April 19th motion to dismiss opt-ins who have not yet served answers to the first 25 interrogatories — the same ones that Mr. Kent said they did not want answered.

22.     At no time after March 22, 2004 did the defendant ever inform plaintiffs' counsel that it had changed it's position and wanted the opt-in plaintiffs to respond to the first 25 interrogatories it said it was withdrawing.

23.     Most importantly, the defendant never informed plaintiffs' counsel that it intended on filing a Motion to Dismiss against the opt-in plaintiffs if it did not have responses to the first 25 interrogatories on or before April 16, 2004. If plaintiffs' counsel would have had any inkling or any indication at all that the defendant planned on filing a Motion to Dismiss I would have prepared and served the defendant with responses well before April 16, 2004 for as many of the opt-ins whose

8

answers were ready. I, in fact, did just that just four days after the defendant filed its Motion To Dismiss serving hand delivered responses for all plaintiff opt-ins to the defendant.

_____
Gregory O. Wiggins

Sworn to and subscribed before me on this ___14th___ day of May, 2004.

Notary Public: _Dean Jernegan_ My Commission Expires: _11-14-04_

NOTARY PUBLIC STATE OF ALABAMA AT LARGE
MY COMMISSION EXPIRES: Nov 14, 2004
BONDED THRU NOTARY PUBLIC UNDERWRITERS

**CERTIFICATE OF SERVICE**

    I do hereby certify that I have mailed a copy of the above and foregoing on May 14, 2004, by U.S. Mail, properly addressed and postage prepaid, on:

James Walker May
T. Matthew Miller
Arnold W. Umbach, III
Abdul K. Kallon
Ronald H. Kent
BRADLEY, ARANT, ROSE & WHITE, LLP
One Federal Place
1819 5th Avenue North
Birmingham, Alabama 35203

_____
OF COUNSEL