FILED
2005 Jan-13 PM 01:53
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| JANICE MORGAN and BARBARA RICHARDSON, on behalf of themselves and all others similarly situated, )<br>)<br>)<br>)<br>Plaintiffs, )<br>)<br>vs. )<br>)<br>FAMILY DOLLAR STORES, INC., )<br>)<br>Defendant. ) | Civil Action Number<br>7:01-cv-0303-UWC |

**MEMORANDUM OPINION ON MOTION TO DECERTIFY**

In the first stage of this action under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"),[1] the Court certified it as a collective action. (R., Doc. 62.) The

---

[1] The FLSA requires that covered employees be paid at one-and-a-half times their regular hourly rate for hours worked in excess of forty hours per week. *See* 29 U.S.C. §207 (a) (1) (1998). Exempted from this requirement is "any employee employed in a bona fide executive . . . capacity . . .." 29 U.S.C. § 213 (a) (1) (1998). The current "executive employee exemption" is defined by the Secretary of Labor as covering an employee who meets the following criteria:

(a) " . . . is compensated on a salary basis at a rate of not less than $455 per week (or $380 per week, if employed in American Samoa by employers other than the Federal Government), exclusive of board, lodging or other facilities;"
(b) whose "primary duty is management of the enterprise in which the employee is employed," or of a customarily recognized subdivision of the employer's enterprise;
(c) "customarily and regularly directs the work of two or more other employees;" and
(d) "has the authority to hire or fire other employees" or whose recommendations as to hiring, firing, and promoting of other employees are "given particular weight."

1

Court certified the class based on the similarities between the working conditions of the named and opt-in Plaintiffs at the Defendant Family Dollar Stores, Inc. ("Family Dollar"). Having completed discovery, Family Dollar has now moved to decertify the class at this second stage of the proceedings.

The relevant factors to be considered at the decertification stage are as follows: 1) similarities in the employment setting and factual situation, 2) the existence *vel non* of defenses individual to each plaintiff, and 3) fairness and procedural considerations. *Brooks v. BellSouth Telecommunications,* 164 F.R.D. 561, 568 (N.D. Ala. 1995)(citing factors set out in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351, 359 (D.N.J. 1988)), *aff'd without opinion,* 114 F.3d 1202 (11th Cir. 1997); *Bradford v. Bed, Bath & Beyond, Inc.*, 184 F. Supp. 2d 1342, 1346 (N.D. Ga. 2002); *Stone v. First Union Corp.*, 203 F.R.D. 532, 543 (S.D. Fla. 2001).

For the reasons that follow, the decertification motion is due to be denied.

### I. Similarities in the Employment Setting and Factual Situation

The facts found in the Court's November 7, 2002, Memorandum Opinion have not been called into question by the subsequent discovery. They are incorporated herein by reference. (*See* R., Doc. 61.)

Family Dollar now operates more than 5,200 retail discount stores in forty-one

---

29 C.F.R. § 541.100 (2005).

(41) states and the District of Columbia. Family Dollar sells a variety of products, ranging from groceries to household furnishings and automotive supplies. For the 2002 fiscal year, annual store sales for individual stores varied from $210,000 to over $4.1 million.

Family Dollar's retail operations are divided into divisions, regions, districts, and stores. Family Dollar has five (5) divisions, and each is headed by a vice president. Each division is further divided into multiple regions. Family Dollar has a total of nineteen regions and each is headed by a regional vice president. Each region is further divided into multiple districts, which are supervised by district managers. Family Dollar has approximately 300 districts, and each district contains multiple stores.

Each store is staffed with a salaried store manager, at least one hourly-paid assistant manager, and at least two hourly-paid clerks. Weekly salaries for store managers range from $400 to over $1,100, plus an additional performance bonus.

The evidence confirms that substantial similarities exist in the job duties of the named and opt-in Plaintiffs. According to Family Dollar, most (90%) of the named and opt-in Plaintiffs interview and train new employees. (*See* R., Doc. 255, Quarles Aff. at Ex. 2,3.) Most of them direct the work of the employees in their stores, and maintain production and sales records. (*See id*.) Further, two out of three (67%) opt-in Plaintiffs supervise fewer than two employees who worked eighty hours per week. (*See id*.)

The evidence also reveals similarities in the managerial duties for which the named

and opt-in Plaintiffs were not responsible. Although classified as store managers, all of the named and opt-in Plaintiffs lack independent authority to hire, promote, discipline, or terminate assistant managers. (R., Doc., 294, Pl.'s Br. at Exs. B, P.) Additionally, they all lack the authority to grant pay raises to employees. (*Id*.) Nor are the named and opt-in Plaintiffs authorized to change the weekly schedules of the hourly employees in their stores; rather, these schedules are set by the corporate office. (*Id*.) Moreover, most of the named and opt-in Plaintiffs are not empowered, in emergencies, to close the stores without the approval of their district manager. (*Id*.)

Thus, none of the named and opt-in Plaintiffs are responsible for the total operation of their stores. Much of the management discretion which would ordinarily be exercised by store managers is exercised by the district management pursuant to corporate policies and practices set at headquarters. The store managers are very closely supervised by the district managers. In terms of managerial duties, the district manager is more directly responsible for the operation of a Family Dollar store than the store manager.

In addition to the above, similarities also exist as to how the Plaintiffs spend their time between managerial and non-managerial duties. Most of the named and opt-in Plaintiffs spend only a small fraction of their time performing managerial duties.[2] They

---

[2] Of course, the time spent in performing managerial duties is not alone determinative of exempt status. *Donovan v. Burger King Corp.,* 672 F.2d 221, 225-26 (1st Cir. 1982); *Guthrie v. Lady Jane Collieries, Inc.,* 722 F.2d 1141, 1144-45 (3d Cir. 1984); *Lott v. Howard Wilson Chrysler-Plymouth, Inc.,* 203 F.3d 326, 331 (5th Cir. 2000).

spend the vast majority of their time on essentially non-managerial duties such as unloading trucks, stocking shelves, working as cashiers, and performing janitorial duties. (*See* R., Doc. 294, Pl.'s Br. at Exs. B,C, D, E.)  Even some of their managerial functions are shared with non-exempt, hourly employees. (R., Doc. 294, Pl.'s Br. at Ex. E.) These shared functions include ordering merchandise, controlling the keys to the store, opening and closing the store, making bank deposits, approving checks, refunds, and returns. (R., Doc. 294, Pl.'s Br. at Ex. C.) Viewed as a whole, the primary duty of the named and opt-in Plaintiffs is non-managerial. The relative time the Plaintiffs spend in performing non-managerial duties does not significantly differ from store to store, district to district, or region to region. Likewise, the relative importance of the non-managerial duties over the limited number of managerial duties for which the named and opt-in Plaintiffs were responsible, did not vary significantly according to store, region, or district.

As with their managerial and non-managerial duties, the basic pay rates of the named and opt-in Plaintiffs are also similar. For example, Family Dollar pays all of its store managers a base salary regardless of the weekly hours they work. (R., Doc. 250, Def.'s Br. at p. 10.)

## II. Individualized Defenses

The differential in pay rates of store managers is not problematic in this collective

5

action. Should a violation of the FLSA be established, the backpay due each store manager can be determined by using a formula to derive the expected hourly rate for each store manager based on their annual salary. The calculation of hourly rates may be accomplished by expert evidence.

The statute of limitations defense is likewise not a bar to the treatment of this case as a collective action. The date on which each opt-in plaintiff joined this action is a matter of public record on file in this Court; the date on which they commenced and/or terminated employment with Family Dollar is easily ascertainable.

Family Dollar's defenses to this action are not sufficiently individually tailored to each plaintiff such that a collective action is unmanageable.

### III. Fairness and Procedural Considerations

Because of the substantial similarities of their job duties, and because of Family Dollar's company-wide policies and procedures relating to its store managers, the plaintiffs may rely on representative testimony to establish liability and obtain relief, if such is warranted under the FLSA. This scenario is similar to that in the trial of certified class actions under Rule 23 (b) (3), where the testimony and evidence put forth by class representatives binds the unnamed class members. *See* Fed. R. Civ. Proc. 23 (c) (3) (providing that judgments in class actions maintained pursuant to Rule 23 (b) (3) shall apply to those who received notice, did not opt out of the class, and whom the court finds

to be members of the class);  7B Charles Alan Wright et al., Federal Practice and Procedure §§1786, 1789 (2d ed. 1986).

Thus, notions of due process and fairness are not offended by a collective trial in these circumstances.  *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680 (1946).

For these reasons, Family Dollar's Motion to Decertify will be DENIED by separate order.

Don this 12th day of January, 2005.

_____
U.W. Clemon
Chief United States District Judge