# IN THE UNITED DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | |
|---|---|
| **JANICE MORGAN, BARBARA RICHARDSON, CORA CANNON,** on behalf of themselves and all others similarly situated, ) ) ) ) ) | |
| **Plaintiffs,** ) ) | |
| vs. ) ) | **CIVIL ACTION NUMBER:** CV-01-C-0303-W |
| **FAMILY DOLLAR STORES, INC.,** ) ) ) | |
| **Defendants.** ) | |

## PLAINTIFFS' MOTION IN LIMINE TO EXCLUDE KARL HAIGLER, JOAN MASON, KATHLEEN LUNDQUIST AND ANY ASSOCIATED EXHIBITS AS TESTIMONY AND EVIDENCE AT TRIAL

The plaintiffs, through undersigned counsel, hereby submit this Motion In Limine to Exclude Karl Haigler, Joan Mason, Kathleen Lundquist, and Any Associated Exhibits as Testimony and Evidence at Trial. The exhibits plaintiffs move to exclude are Exhibit Nos. 1597, 1739, 2085, 2086, 2087, 2088, 2089, 2090, 2091, 2092, 2093, 2094, 2097, 2098, 2099, 2100, 2103, 2104, and 2105. See Doc. 402. The plaintiffs seek to exclude the witnesses and exhibits pursuant to Rules 402 and 702, Federal Rules of Evidence.

Mr. Haigler and Ms. Mason created a study that they conceded is relevant only for the training of Family Dollar's Assistant Managers, not to determine the duties

and responsibilities of Store Managers. Dr. Lundquist authored a job analysis report based upon the Haigler/Mason study, yet, Mr. Haigler expressly stated that the study conducted by Ms. Mason and him was inappropriate for use as a job analysis of the Store Manager position, principally because its focus was the training of Assistant Managers, not to delineate the actual duties performed by Store Managers. The Haigler/Mason study, and any putative testimony based upon the study, also suffer from the additional problem that they are scientifically unreliable. Therefore, Mr. Haigler, Ms. Mason, and Dr. Lundquist should not be allowed to testify at trial, and the Haigler/Mason study and supporting exhibits should be struck as evidence.

## FACTUAL BACKGROUND

In Family Dollar's Witness List, the defendant lists Karl Haigler, Joan Mason, and Kathleen Lundquist as witnesses for trial. See Doc. 401 at 2. Karl Haigler and Joan Mason are consultants who were commissioned by Family Dollar as part of its Multi Urban Sourcing and Training Program (MUST).[1] As Mr. Haigler testified, the "focus" of the project undertaken by him and Ms. Mason was "to develop training" for Family Dollar's Assistant Managers. Karl Haigler Dep. at 35-36 (attached as Exh.

---

[1] At the time of his consultancy for the MUST project, Mr. Haigler was employed by a company called SHL. K. Haigler Dep. at 47. Mr. Haigler commissioned Joan Mason, who worked with the South Carolina Workplace Resource Center at the time, to assist him with the MUST project. Haigler Dep. at 36.

1). Mr. Haigler also acknowledged that their study would not be probative of the duties and responsibilities of Family Dollar's Store Managers:

> Q: Were you trying to determine all the duties and responsibilities of the store managers?
>
> A: No. * * *
>
> Q: Do you think this program and the work that was done as part of this would be sufficient for you to determine the actual work that was being performed by store managers in twenty-five hundred stores? * * *
>
> A: . . . I think it would – it would not be sufficient. I think it would be a starting point, but not sufficient.

Haigler Dep. at 37, 51-52 (objection omitted).

As a part of their project, Mr. Haigler and Ms. Mason generated a work profiling report regarding some of the tasks performed by a Store Manager. Mr. Haigler and Ms. Mason created the work profiling report by interviewing 18 Family Dollar employees in three different urban markets: Charlotte, North Carolina; Columbia, South Carolina; and Atlanta, Georgia. Id. at 64-65. Mr. Haigler testified that the 18 participants were confined to selecting the tasks of Store Managers from a pre-existing program which listed 31 "task categories." Id. at 37-38, 43. Mr. Haigler also explained that work profiling is not a job analysis, which falls within the province of industrial psychologists; indeed, work profiling is just the "first step" in

creating a job analysis. Id. at 137. The exhibits plaintiffs seek to exclude at trial are some of the documents resulting from Mr. Haigler's and Ms. Mason's study.

Kathleen Lundquist, who describes herself as a psycho-metrician, was hired by defendant's counsel to render an opinion as to the adequacy of Mr. Haigler's work profiling report as job analysis information for Family Dollar's Store Managers. Kathleen Lundquist Dep. at 60-61, 64 (attached as Exh. 2). Although Dr. Lundquist contradicted Mr. Haigler's assertions by producing a report that described his work profiling as job analysis,[2] she nonetheless conceded that the results of Mr. Haigler's and Ms. Mason's work profiling report could not be generalized to all of Family Dollar's Store Managers:

> Q:  Did he [defendant's counsel] tell you that he wanted to generalize those results to all Family Dollar store managers?
>
> A:  No, he did not.
>
> Q:  Have you attempted to do that in this –
>
> A:  No.
>
> Q:  And what do you understand generalized in the context I've just used it to mean?
>
> A:  I think as you've just used it, I understood you to be asking me if I would say that the information collected in these three locations would

---

[2] The defendant has not listed Dr. Lundquist's report as an exhibit for trial, so it is not at issue in this case.

be accurate and appropriate for use across all Family Dollar stores throughout the country. And it's my professional opinion and I believe Dr. Locklear's professional opinion as well, that this information is useful for getting there, but it's not the final answer with regard to the larger group. It is what it is, a job analysis study conducted at three locations to be representative of the kinds of jobs that would be the subject of this training program. * * *

Q: Is that consistent, those numbers, you think appropriate for this work that was done by WPS to reflect the actual work done overall in Family Dollar stores? * * *

A: The intent of the WPS [work profiling report] work, as I understand it, was not to represent all Family Dollar stores, but rather was to represent the work that was performed in these three markets with a particular look at major urban areas because it was a major urban training initiative. . . .

Lundquist Dep. at 61-62, 191 (objection omitted).

## **DISCUSSION**

Haigler, Mason, and Lundquist should not be allowed to testify at trial because their putative testimony is irrelevant and unreliable pursuant to Rules 402 and 702, Federal Rules of Evidence.

Rule 402 provides that irrelevant evidence is not admissible at trial.[3] Rule 702 provides:

If scientific, technical, or other specialized knowledge will assist the

---

[3] Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.

> trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. The Supreme Court has parsed Rule 702 to identify three requirements for the admission of purported scientific testimony: 1) the witness must be qualified as an expert; 2) the subject matter of the witness' testimony must be relevant to one or more issues in the underlying case at bar; and 3) the testimony must evince evidentiary reliability. Daubert v. Merrell Dow Pharm., 509 U.S. 579, 591 (1993); see also Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137 (1999).

### A. Relevance

Rule 702 requires that expert evidence or testimony "assist the trier of fact to understand the evidence or to determine a fact in issue." As explained by the Daubert Court, this "condition goes primarily to relevance. 'Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful.'" Daubert, 509 U.S. at 591 (citations omitted). A variant of this requirement provides that "scientific validity for one purpose is not necessarily scientific validity for other, unrelated purposes." Id. (citations omitted).

Based upon the testimony cited in the Factual Background, Mr. Haigler's and

Ms. Mason's putative testimony and exhibits are irrelevant under both Rules 402 and 702.[4]  Mr. Haigler testified that the study conducted by Ms. Mason and him was not designed to ascertain the duties of Store Managers, but rather, was designed solely to set up a training program for Assistant Managers.  Haigler Dep. at 37.  Indeed, Mr. Haigler testified that the results of their study was never intended to predict, or reflect in any way, the actual duties of Store Managers at Family Dollar.  Id. 51-52.  Therefore, their putative testimony, and the associated exhibits listed above, have no bearing upon the issue in the upcoming trial: whether the opt-in plaintiffs' primary duty was management.

Likewise, Dr. Lundquist's putative testimony suffers from the same infirmity

---

[4] During Mr. Haigler's deposition, defendant's counsel stated that Mr. Haigler is not designated as an expert, and by implication, one assumes it will take the same position with respect to Ms. Mason.  Haigler Dep. at 7.  However, to the extent Mr. Haigler and Ms. Mason are tendered by the defendant to offer opinions as to the duties and responsibilities of Family Dollar's Store Managers based upon its work profiling report, then the defendant's characterization of Mr. Haigler does not control.  Rule 701, Fed. R. Evid., provides:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

As the Eleventh Circuit stated, section "c" of Rule 701 was added in 2000 "'to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing.'" Tampa Bay Shipbldg. & Repair Co. v. Cedar Shipping Co., Ltd., 320 F.3d 1213, 1222 (11th Cir. 2003) (citing Fed. R. Evid. 701 adv. cmt. note).  Therefore, Mr. Haigler and Ms. Mason may not testify as lay witnesses because they utilized methods and techniques that are within the province of expert analysis.  They must satisfy the requirements of Rule 702, not Fed. R. Evid. 602.

7

as Mr. Haigler's and Ms. Mason's. Dr. Lundquist's opinions at trial as to the adequacy of the work profiling report for job analysis would rest upon the study of Mr. Haigler and Ms. Mason. Because Mr. Haigler conceded that he undertook his study to develop a training program for Assistant Managers, any purported job analysis that may be created from the study is wholly irrelevant to the issues in the pending trial.[5] Even Dr. Lundquist conceded that Mr. Haigler's study is not "accurate and appropriate for use across all Family Dollar stores throughout the country." Lundquist Dep. at 62. Therefore, because Mr. Haigler's and Ms. Mason's study is irrelevant for the issues at trial, Dr. Lundquist's putative testimony based upon that study should not be allowed either.

### B.  Reliability

Rule 702's third condition for admissibility of expert testimony addresses the evidentiary reliability of the "expert" opinion. In the context of Rule 702, evidentiary reliability is akin to scientific validity, i.e., application of a principle or technique supports what it purports to show. Id. at 590 n. 9; c.f., U.S. v. Lee, 25 F.3d 997, 999 (11th Cir. 1994) ("Daubert applies not only to testimony about scientific concepts but also to testimony about the actual applications of those concepts").

---

[5] Indeed, as indicated in the Factual Background, Mr. Haigler cautioned that his work profiling study was not a job analysis, but only the "first step" for conducting a job analysis. Haigler Dep. at 137.

8

Although the Daubert opinion identified several factors that may be pertinent to a Rule 702 reliability analysis, id. at 593-94, these factors "'may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony.'" Kumho Tire, 526 U.S. at 150 (citation omitted). "That is to say, a trial court should consider the specific factors identified in Daubert where they are reasonable measures of the reliability of expert testimony." Id. at 152; accord Siharath v. Sandoz Pharmaceuticals Corp., 131 F. Supp. 2d 1347, 1356 (N.D. Ga. 2001) (Thrash, J.) (the "Daubert criteria are noninclusive"). For purposes of the reliability inquiry at bar, "*any* step that renders [an expert] analysis unreliable under the *Daubert factors renders the expert's testimony inadmissible. This is true whether the step completely changes a reliable methodology or merely misapplies that methodology*." In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 745 (3d Cir. 1994) (emphasis in original) (quoted in Fed. R. Evid. 702 adv. cmt. note).

Plaintiffs utilized the services of a human resources management professional who has published in the area of job analysis, Dr. John G. Veres, III, to assess the reliability of the work profiling report created by, and putative testimony of, Mr. Haigler and Ms. Mason, and the subsequent job analysis produced by Dr. Lundquist which rests upon the Haigler/Mason study. In his Supplemental Report, Dr. Veres

9

identified several flaws in the Haigler/Mason work profiling report that marred its reliability for purposes of generalizing it to Family Dollar's Store Managers. First, the system used by Mr. Haigler and Ms. Mason allowed the 18 Family Dollar employees to select from only pre-selected tasks, and thus, precluded their identification of additional tasks. See J. Veres Supplement to 4 June 2003 Report, at 4 (attached as Exh. 3). This flaw renders incomplete information for extrapolation to all Store Managers at Family Dollar. Id.

Second, the Haigler/Mason work profiling report is unreliable because the individual ratings of the 18 Family Dollar employees were not recorded. Instead, group consensus ratings for each task were collected from the three focus groups comprised of the 18 Family Dollar employees. Id. Therefore, the degree of agreement among the 18 employees as to the value of the pre-selected tasks cannot be determined, and the group consensus ratings may be distorted because of the disproportionate influence of dominant group members. Id. at 4-5.

Third, Dr. Veres determined that the ratings regarding the time spent on tasks lacked the specificity sufficient to produce reliable results. Id. at 5. As an illustration, Dr. Veres re-produced a table created by Dr. Lundquist that was based upon the Haigler/Mason study. The table reflected the ratings for time spent on tasks per work week. Id. at 5-6. Incredibly, the Lundquist table reflected that Family

Dollar's Store Managers spent **248** hours per week on work tasks.  Id.  These results are definitely unreliable.

Finally, Dr. Veres found that the Haigler/Mason study is unreliable because it is not representative of Family Dollar Store Managers.  Id. at 7-8.  More specifically, Mr. Haigler and Ms. Mason did not use a *random* sample of Store Managers across the country to produce their work profiling results, and Dr. Veres concluded that a sample of 18 individuals was *too small* to generate any useful results regarding Family Dollar's Store Managers.  Id.  As a consequence, even barring the other infirmities listed above, the Haigler/Mason work profiling study has no applicability beyond the three markets where they were conducted and is rife with error based upon the small sample used to create it.  Id.

Therefore, the putative testimony of Mr. Haigler and Ms. Mason, and the exhibits underlying the basis for their testimony, will be unreliable evidence pursuant to Rule 702.  Furthermore, because Dr. Lundquist's putative testimony rests upon the Haigler/Mason study, her testimony will be unreliable as well.  Thus, she does not satisfy the Rule 702 reliability strictures either.

Dr. Lundquist's putative testimony is also fundamentally unreliable based upon the testimony of Mr. Haigler himself.  Dr. Lundquist testified that she endeavored to determine the adequacy of the Haigler/Mason work profiling study as a proper job

11

analysis, but Mr. Haigler clearly testified that his study was not a job analysis. Haigler Dep. at 137. It was, at best, a "first step." Id. Mr. Haigler's admission underscores the reason why he deemed his study not predictive of Store Manager duties. Yet, Dr. Lundquist flies in the face of Mr. Haigler's characterization of his own report and calls it a job analysis. Dr. Lundquist's contradiction represents the essence of unreliability, and Dr. Lundquist's putative testimony should be disallowed for this additional reason.

## **CONCLUSION**

WHEREFORE, PREMISES CONSIDERED, plaintiffs respectfully request the Court to grant their Motion In Limine to Exclude Karl Haigler, Joan Mason, Kathleen Lundquist, and Associated Exhibits as Testimony and Evidence at Trial.

Respectfully submitted,

*/s/ Herman N. Johnson, Jr.*
Robert L. Wiggins, Jr.
Robert F. Childs, Jr.
C. Michael Quinn
Gregory O. Wiggins
Herman N. Johnson, Jr.
Kevin W. Jent
Counsel for the Plaintiffs

OF COUNSEL:

Wiggins, Childs, Quinn & Pantazis, LLC
The Kress Building
301 Nineteenth Street North
Birmingham, Alabama 35203
205/314-0500

                J. Allen Schreiber
                P. Mark Petro

OF COUNSEL:
SCHREIBER & PETRO, P.C.
Attorneys at Law
Suite 250
2 Metroplex Drive
Birmingham, Alabama 35209

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 6, 2005, I served the forgoing via CM/ECF to the following:

James Walker May
T. Matthew Miller
Arnold W. Umbach, III
Abdul K. Kallon
Ronald H. Kent
Joseph B. Mays
BRADLEY, ARANT, ROSE & WHITE, LLP
One Federal Place
1819 5th Avenue North
Birmingham, Alabama 35203

J. Mark White
WHITE ARNOLD ANDREWS & DOWD, P.C.
Suite 600, 2025 Third Avenue North
Birmingham, Alabama 35203

           */s/ Herman N. Johnson, Jr.*
           OF COUNSEL

## **LIST OF EXHIBITS**

Exhibit 1:         Karl Haigler Depositions Excerpts

Exhibit 2:         Kathleen Lundquist Deposition Excerpts

Exhibit 3:         John G. Veres, III, Supplement to 4 June 2003 Report

Exhibit 3(A):     Appendix to J. Veres Supplement – Resume